**Darryl NORTON, Plaintiff,**

v.

**Patricia GARRO, Eugene Nimmer, Cindy O'Donnell, and Gary McCaughtry, Defendants.**

**Civil Action No. 95–C–485.**

United States District Court,
E.D. Wisconsin.

March 20, 1997.

Gillam Kerley, Madison, WI, for Plaintiff.

David E. Hoel, Asst. Atty. Gen., Madison, WI, for Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

REYNOLDS, District Judge.

Plaintiff Darryl Norton ("Norton"), formerly an inmate at Waupun Correctional Institution ("Waupun"), alleges that defendants, who were all employees at Waupun, violated his substantive and procedural due process rights, as well as his Eighth Amendment right to be free from cruel and unusual punishment, when he was found to have disobeyed a correctional officer's order and was given segregation time. Norton also alleges state law claims for being confined in segregation against his will by threat of physical force, and for defamation.[1] Norton seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Before the court is defendants' motion for summary judgment.

---

1. Because defendant Cindy O'Donnell, the WCI security director, was not personally involved in any activity which allegedly violated Norton's rights, Norton concedes that all claims against her should be dismissed.

## BACKGROUND

Tina Witte ("Witte"),[2] a Waupun correctional officer, was assigned to work in the Waupun visitor room on April 13, 1994. Witte wrote a conduct report to Norton, who was working in the visitor room, concerning an incident which occurred that day.

The incident arose when Norton and another inmate who was working in the visitor room, Harold Kuntz ("Kuntz"), moved behind Witte while she was sitting at the sergeant's desk. They had previously been instructed to stand behind the sergeant's desk when waiting to go on break, which was the case. After the inmates moved behind her, Witte turned around and told them that she did not want them standing behind her. Witte intended the statement as an order that the inmates move from behind her to where she could see them while logging in people and watching inmates.

What happened next is disputed and gives rise to the issuance of a conduct report. The conduct report describes the incident as follows:

> On the above date and time [April 13, 1994 at 6:00 p.m.] inmate Darryl Norton # 172332 and Harold Kuntz # 39114–A approached me (c/o [Correctional Officer] Witte) at the officers desk in the visiting room and asked me if they could use the restrooms I said "yes as soon as an officer can escort you down to the shake down" Kuntz and Norton then stood directly in back of the desk. I noticed the cammera [sic] follow the inmates. I turned around and said I do not want you standing behind me. Inmate Norton said why are you "paranoid"? I said no I just don't want you standing behind me when I am trying to log people in and watch the visiting room. Norton then asked who told you we couldn't stand here? Norton also said "you were just told about how the Sgt's get hurt"[3] I said "no, I don't want inmates standing behind me when I am sitting at

the desk." Norton stated "I want to know who told you we couldn't stand here because you are the only one that says anything." Norton then asked why they had to wait and I told him that the officers were busy and then Norton walked away. I was instructed to write this per Lt. Kloehn.

(Oct. 31, 1995 Garro Aff., Ex. D at 1–2.)

The primary dispute is about the timing of Norton's compliance with Witte's order to move. Witte attests that Norton did not move immediately when Witte told him she did not want him standing behind her. Rather, he continued to stand behind her while asking her questions and distracting her from her duties, moving from behind her at some point. (Oct. 31, 1995 Blake Aff. ¶ 6. ) On the other hand, Norton attests that he immediately moved to the side of the desk. (Feb. 7, 1996 Norton Aff. ¶ 6.)

Defendant Patricia Garro ("Garro"), Waupun's program captain,[4] and defendant Eugene Nimmer ("Nimmer"), Waupun's superintendent of buildings and grounds, made up the adjustment committee which handled the May 3 disciplinary hearing on the charges alleged against Norton in the conduct report. Norton requested that three witnesses, Witte, Kuntz and Waupun correctional officer Vincent, appear at the hearing. Norton attended with his advocate. At disciplinary hearings, one member of the adjustment committee records oral testimony by hand; witnesses may also supplement their oral testimony with a written statement.

Witte's testimony indicated that the conduct report was accurate[5] Norton attests that at the hearing, he asked Witte whether he immediately moved from behind her and she answered in the affirmative. (*Id.* ¶ 17.) Norton testified that he immediately moved to the side of the desk, which position was also contained in a written statement he presented to the committee. (Feb. 7, 1996

---

**2.** Witte's current last name is "Blake." For purposes of this decision, the court will use "Witte" except in citations to her affidavit.

**3.** Norton denies that he made this statement.

**4.** As program captain, Garro administers and supervises program segregation under supervision of the security director.

**5.** Witte also attests separately that the conduct report correctly describes the incident at issue. (Blake Aff. ¶ 3.)

Norton Aff. ¶¶ 18, 19.) Correctional Officer Vincent was unavailable because he was on vacation, so a written statement prepared by him was submitted. The statement indicated that visitor room workers had been instructed to stand behind the sergeant's desk when they were waiting to go on break or to leave.

Nimmer attests that there was conflicting testimony at the hearing regarding whether Norton had complied immediately with the order from Witte to move from behind her. (Oct. 26, 1995 Nimmer Aff. ¶ 4; see also Garro Aff. ¶ 23.) Nimmer and Garro attest that Witte did not testify that Norton immediately moved when told to do so. (Nimmer Aff. ¶ 5; Garro Aff. ¶ 21.)

Nimmer and Garro determined that Norton was guilty of disobeying an order in violation of DOC § 303.24, and not guilty of disruptive conduct (DOC § 303.28). The reason given was that "[t]he inmate intentionally disobeyed an order to move." (Garro Aff., Ex. D at 7.) The adjustment committee gave Norton six days of adjustment segregation and 180 days of program segregation.

On May 11, defendant Gary McCaughtry ("McCaughtry"), the Waupun warden, concluded that there was sufficient evidence of guilt to support the adjustment committee's finding that Norton had disobeyed Witte's order. Given Norton's otherwise good record, McCaughtry reduced the program segregation penalty from 180 to 60 days; Norton actually was in adjustment segregation for 6 days and in program segregation for 24 days.

## *DISCUSSION*

### *Federal Claims*

■ Norton claims that defendants violated his Due Process and Eighth Amendment rights; these claims are before the court pursuant to 42 U.S.C. § 1983. While defendants raise substantive challenges to these claims, there is an important procedural issue which affects this court's jurisdiction. Under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Norton must first challenge the decision to discipline him in state court and, if that challenge fails, file a habeas corpus action under 28 U.S.C. § 2254 before he can sue for damages under § 1983.

■ For criminal sentences and prison disciplinary punishments, the state court has the first chance to correct any errors. Before a prisoner may file a habeas corpus action (28 U.S.C. § 2254) to restore lost good time, the prisoner must appeal the adverse prison disciplinary findings to state court. *Clayton–EL v. Fisher*, 96 F.3d 236, 242 (7th Cir.1996) (applying *Heck* to prison disciplinary decisions). Although 42 U.S.C. § 1983 allows a prisoner to recover damages for a constitutional violation and has no requirement of exhausting state remedies, a prisoner cannot bring a claim that could justify habeas corpus relief, unless the prisoner has complied with procedural prerequisites for a habeas case. *Id.* Otherwise, a prisoner could bring a § 1983 suit, and the federal court's findings would bind a state court reviewing the disciplinary decision.

■ The nature of the claim, not the relief sought, determines whether a prisoner has met the § 2254 requirements before filing a § 1983 claim. This court can make no finding that would justify vacating or reversing the disciplinary decision or punishment. In other words, if the factual findings necessary for a successful § 1983 claim would, if made by a state court, vacate or reverse the disciplinary decision or punishment, this court may not hear the § 1983 case. *Id.*

All of Norton's federal claims stem from challenges to the disciplinary hearing. The federally-based claims are therefore not properly before this court and must be dismissed. *Id.* at 242–243, 245; *Lewis v. Richards*, 107 F.3d 549, 555 (7th Cir.1997).

### *State Claims*

■ Norton also alleges state law claims against Garro, Nimmer and McCaughtry for being confined in segregation against his will by threat of physical force, and for defamation. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Norton's state law claims.

*CONCLUSION*

Defendants Patricia Garro, Eugene Nimmer, Cindy O'Donnell, and Gary McCaughtry's motion for summary judgment is **GRANTED** and this action is **DISMISSED.**